JOYNES, J.
The note on which this action is founded was executed on the 8th day of November, 1861, for the payment of $1,714.66, three years after date. It was given on account of the purchase money of land, sold for one-fourth cash, and the residue in one, two and three years. The cash payment was made by a check on the Farmers’ Bank, and the first two notes were paid in Confederate notes; but it is stated in the facts agreed, that there was no agreement at the time of the sale that the notes should be paid in that currency. The question to be decided is, whether the third note was payable in Confederate notes.
The act of March 3, 1866, provides, that in any action founded on any contract, express or implied, made and entered into between the 1st day of January, 1862, and the 10th day of April, 1865, it shall be lawful for either party to show, by parol or other relevant evidence, what was the true understanding and agreement of the parties, either expressed or to be implied, as to the kind of currency in which it was to be fulfilled or performed, or in ‘^reference to which, as a standard of value, it was made and entered into. This case does not come within the provisions of that act, because the note was made before the 1st day of Januarj', 1862. It is doubtful, to say 'the least, whether parol evidence of the actual understanding and agreement of the parties as to the kind of currency in which a contract is to be fulfilled, which is expressed to be payable in “dollars” generally, would be admissible independently of the provisions of that act. The word “dollars” has a definite signification fixed by law, and it is laid down that “when the words have a known legal meaning, such, for example, as measures of quantity fixed by statute, parol evidence that the parties intended to use them in a sense different from their legal meaning, though it was still the customary and popular meaning, is not admissible.” 1 Greenleaf Ev. $ 280. See also Smith v. Walker, 1 Call 24; Commonwealth v. Beaumarchais, 3 Call 107. We need not decide whether such evidence could have been received in this case, because it is expressly stated in the facts agreed that there was no such actual agreement.
It is contended, however, that the law will imply an agreement, under the circumstances of this case, to accept Confederate money in payment of the note on which the action is founded. The argument is, that the note having been made after the establishment of the Confederate States, must be considered as made with reference to the actual currency of those States, and that as Confederate notes were the actual currency in those States at the time the note became payable, it was payable in that currency. It must be remembered, however, that Confederate notes were never made a legal tender. They were never the lawful money of the country, but only a substitute for money, like bank notes. Gold and silver were the lawful money of the Confederate States at the time this note *761 was i!'made, and also at the time it became payable, according to the provisions of the act of the Congress of the United States, expressly adopted by the Congress of the Confederate States. The principle of public law relied on by the counsel for the appellant, and quoted from Story Confi. I 242, presumes, in the absence of evidence to the contrary, that every contract is made with reference to the lawful currency of the country in which it is entered into. It does not presume it to be made with reference to any substitute for such currency which may happen to circulate. A contract made in Richmond before the war, for the payment of so many dollars, would not have been deemed payable in bank notes, though bank notes were then the common, and practically the exclusive, currency. And so in this case, if we apply to the Confederate States the principle relied on, the note must be deemed payable in specie, which was the lawful money of the Confederate States at the time it became payable.
There was no law of the Confederate States, or of the State of Virginia, controlling or affecting this legal presumption until the act of Assembly passed October 14, 1863. That act provided, that all contracts made and entered into on or after the 20th day of October, 1863, should be deemed payable in such currency as should, at the time of their becoming payable, be receivable in payments to the State of Virginia, unless that intendment should be expressly excluded. This act indicates the sense of the Legislature that there was no such presumption independently of its provision. The act of March 3, 1866, provided that, as to all contracts made after the 1st day of January, 1862, an enquiry might be made to ascertain what sort of currency was really contemplated by the parties. That act was wholly unnecessary, if, as now contended, every contract made in the Confederate States, must be deemed payable in the actual currency at the time of its becoming payable.
*Nor does the fact that the plaintiff accepted payment of the first two notes in Confederate money preclude him from insisting upon lawful money for the note now in question. Upon an enquiry into the actual intention and understanding of the parties, the fact that the plaintiff accepted Confederate money for the first two notes would be a circumstance having some tendency to show that there was an understanding that all the notes should be payable in that currency. But it would not be sufficient of itself to overcome the legal presumption in a case arising before the 20th day of October, 1863. A man before the war might forego his legal right to demand specie on a,ny one or more of a series of notes, bjr accepting payment in bank notes, and even in depreciated bank notes, without affecting in any manner his right to demand specie on any other of such notes. And, in this case, it is expressly stated that there was no agreement at the time of the sale that the notes should be payable in Confederate money. We are not at liberty, therefore, to make any inference of such an agreement as matter of fact.
The recent decision of this court in Dearing’s adm’r v. Rucker, has no bearing on this case. The bond in that case was executed after the 1st day of January, 1862, and the facts stated satisfied the court that, “according to the true understanding and agreement of the parties,” it was to be paid in Confederate notes.
There is no error in the judgment, and it must be affirmed.
The other judges concurred in the opinion of Joynes, J.
Judgment affirmed.